[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The above captioned cases have been consolidated, thus, the issues tried to this court, as resolved, will apply to each case where germane and appropriate as dictated by the pleadings in each case. Further, the court will refer to the plaintiff in case #64983 and the defendant in case #55062 as TIE. The court will refer to the plaintiff in case #55062 and the defendants, Robert J. Kopp, and Intergrated Power Technology, Inc. in case #64983 as TUC, IPT or Kopp as the need may be.
In case #64983, TIE, in count six of its complaint, alleges that IPT fraudulently invoiced it for engineering work and technical documentation in connection with the "Morgan" power supply. TIE has failed to persuade the court, by clear and convincing evidence, that IPT committed a fraud in connection with said invoice and accordingly finds this issue in CT Page 2319 favor of IPT.
However, the court does find, by a preponderance of the credible, relevant and legally admissible evidence, that IPT breached its contractual obligations mandated in paragraph 2 in an agreement between TIE and IPT, dated September 9, 1988. (We note that the agreement was signed by all relevant parties to this action, namely TIE/Communications, Inc., Integrated Power Technology, Inc., TUC Services Corporation and Robert J. Kopp, individually).
At all times pertinent hereto, TIE was in the business of designing, manufacturing, selling and distributing telecommunications systems for the business and home office markets.
During such period, IPT was in the business of designing, engineering, manufacturing and repairing power supplies for use as an integral part of the communication systems of TIE. of particular importance to TIE was a power supply provided to it by IPT known as the Morgan power supply. IPT was TIE's sole supplier of the Morgan.
IPT, never in good financial shape, began to experience considerable financial difficulties in the fall of 1987. In order to assist IPT and in turn protect its supplier of the Morgan, TIE posted a letter of credit with Citytrust for the benefit of IPT. Kopp became personally obligated upon default, by an indemnification agreement dated October 20, 1987.
Early in 1988, Kopp, again in the throes of financial difficulty, came to TIE for assistance. The parties worked out an arrangement whereby TIE agreed to purchase and IPT agreed to sell to TIE the engineering work and documentation in connection with certain products IPT had been manufacturing for TIE. Among these was the Morgan power supply. IPT agreed to provide TIE with technological transfers sufficient in scope and quality to enable any competent third party manufacturer to produce such components. TIE's purpose was to enable it to second source the products. TIE wanted to be in a position to look elsewhere for the products if IPT went out of business.
Pursuant to the arrangement, IPT submitted invoices representing purported technology transfers in the amount of CT Page 2320 $450,000.00. TIE has paid $370,000.00 of that amount leaving approximately $80,000 unpaid. The $80,000.00 represents an amount claimed due by IPT for its engineering transfers, to TIE, of the Morgan power supply.
On August 30, 1988, Citytrust drew against TIE's letter of credit in the full amount of $250,000.00, claiming that IPT was in default.
TIE immediately requested that Kopp make it whole as to the letter of credit.
The parties on September 9, 1988, signed an agreement wherein Kopp personally and on behalf of IPT and TUC agreed to reimburse TIE for the $250,000.00 letter of credit by providing for TIE to receive certain credits and offsets of certain charges between TIE and TUC/IPT. The September 9, 1988 agreement, particularly as it related to paragraph 2 of same is the principal issue of this trial.
Paragraph 2 of said agreement states:
 "TIE shall have no obligations to make any payment to IPT for or in connection those engineering services and technical documentation heretofore provided by IPT to TIE with respect to power supplies produced by IPT for TIE, and all obligations of TIE to IPT with respect to or in connection with such engineering services and documentation are hereby deemed satisfied. The provisions of paragraph 2 shall constitute satisfaction of the obligations to the extent of $80,000.00."
All parties agree that the provisions of paragraph 2 relate to the engineering and technical documentation, which was to be provided by IPT, for the Morgan power supply.
TIE claims that at the time of the September 19, 1988 agreement and up to the date of trial satisfactory documentation relating to the Morgan power supply was not provided. CT Page 2321
In early 1989, Citytrust foreclosed upon and sold the assets of IPT and TUC.
Kopp claims that the $80,000.00 obligation under the agreement has been satisfied and that he is not longer liable for same as guarantor.
The primary dispute between the parties is whether IPT ever provided satisfactory engineering documentation for the Morgan power supply. Kopp, relying on the parol evidence rule, avers that the court should determine the issue of compliance solely by reference to the "heretofore provided" language of paragraph 2 of the September 9, 1988 agreement.
However, the supreme court in an earlier appellate review in this action held that the parol evidence rule is not a rule of the evidence but rather a rule of a substantive contract law. TIE Communications, Inc. v. Kopp, 218 Conn. 281,288, 589 A.2d 329, 332 (1991). Thus the rule does not forbid the presentation of "parol evidence"but forbids the use of such evidence to vary or contradict the terms of a fully integrated agreement. Id. 288. Such evidence is properly admitted and relied upon if it is offered:
 "(1) to explain an ambiguity in the instrument; (2) to prove a collateral oral agreement which does not vary the terms of the writing; (3) to add a missing term in a writing which indicates on its face that it does not set forth the complete agreement; or (4) to show fraud or mistake." Id. 288-89.
This court agrees with the PJR court and the supreme court that the language of paragraph 2 is ambiguous and that testimony and evidence is admissible "to explain an ambiguity in the instrument." IPT interprets the language in the agreement as supporting his contention that he fully performed where as TIE contends that there was not full performance by IPT and that the language indicates that TIE had no obligation to pay $80,000.00 until the engineering transfer was completed.
The court expressly finds that the language in paragraph 2 of the parties agreement contemplates that upon the completed CT Page 2322 transfer of the engineering and technological documentation with respect to the Morgan power supply, IPT's obligation to TIE would be credited with the amount of $80,000.00. The court expressly finds that such transfer was not completed.
IPT knew or should have known what constitutes a completed engineering documentation base consistent with generally accepted engineering standards.
By memo to Robert Kopp dated March 28, 1988, TIE's representative set forth the minimal acceptable database as: (a.) all schematics; (b.) all bills of material; (c.) all assembly drawings; (d.) all test procedures; (e.) all details of test equipment; (f.) any specification control drawings; (g.) any other engineering related data.
In another memo dated June 14, 1988, copy to B. Kopp, the following language appeared, "The following technology packages are not yet approved and are in need of resolutions by TUC/IPT. No schedule of completion has been submitted by TUC/IPT.
 . . . . 4 Old Morgan Power supply Insufficient documentation to meet TIE approval standard. Appears to be too much effort required to bring it up to standard considering its limited life and the greatly improved new Morgan power supply designed by TUC/IPT."
No credible evidence was adduced that at a date later than said memo an acceptable completed Morgan package was supplied to TIE.
The function of the Morgan power supply is to transform higher voltage alternating electrical current, commonly supplied to business and residences, into a consistent low voltage direct current of 5 volts with minimum variation. The Morgan is a complex product composed of an array of printed circuit boards, switches, transformers, wiring, heat sinks, rectifiers and other components in juxtaposition and connected to each other in such a way such as to interact and accomplish the above purpose. The positioning and interconnection of the CT Page 2323 components is vital to its operation.
IPT failed to supply assembly drawings indicating the proper sequence, juxtaposition and interconnection of the components of the Morgan supply. The materials transferred lacked the most elemental guide, that is a schematic of a wiring harness illustrating the required electrical connection between the multiple subassemblies in order to complete a functioning power supply to the Morgan specifications.
Much of the material supplied by IPT with regard to the Morgan was informal in nature in that it consisted of sketches rather than formal updated diagrams with proper titles and revision blocks.
Evidence offered at trial indicated that IPT supplied much more detailed, clear, concise and workable documentation for less complicated power supplies than IPT supplied for the more complex Morgan.
The court expressly finds that IPT did not supply TIE with an engineering and technological transfer of a data base that would meet generally accepted engineering standards and did not provide adequate information for a third party vendor to manufacture the product.
Accordingly, in Case No. 64983, TIE/Communications, Inc. v. Robert J. Kopp, and Integrated Power Technology, Inc. judgment should enter for the defendants on count 6 of the plaintiff's compliant.
In Case No. 55062, TUC Services Co. v. TIE/Communications, Inc., any judgment entered with respect to TIE's counterclaim shall be predicated, at least in part, upon the courts having found the issues in paragraph 10 of the defendant's counterclaim for the defendant, TIE.
Further, having found that IPT had breached its agreement by not providing adequate technological transfers as contemplated in its agreement with TIE, such finding is res judicata as to this issue and as such is applicable through Case No. 55062 and Case No. 64983 as the pleadings may require.
SPALLONE STATE TRIAL REFEREE CT Page 2324